UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
OMAR B. LAMONT,

                                                                          DECISION AND ORDER
                                               Plaintiff,                 12-cv-2478 (WFK) (JMA)


            -against-


THE CITY OF NEW YORK, POLICE OFFICER
SOO-HO; DISTRICT ATTORNEY OF QUEENS
COUNTY; ANGELA I. ABAD, and OTHER
UNKNOWN POLICE OFFICERS OF THE NEW
YORK CITY POLICE DEPARTMENT,


                                               Defendants.
-------------------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

In this action, the Court is confronted with a lawsuit over a breakup. In December 2011, Defendant
Angela Abad, the ex-girlfriend of Plaintiff Omar B. Lamont, filed three reports on two separate
occasions with the New York City Police Department ("NYPD") alleging that Plaintiff had slashed
her car tires. Abad provided corroborating and specific information about Plaintiff and told police
that she had surveillance video of the incident, though the face of the perpetrator was not visible.
After numerous attempts by the police to locate Plaintiff were unsuccessful, he turned himself in.
At Plaintiff's arraignment, the Queens County District Attorney declined to press charges, and
Plaintiff was released. Plaintiff alleges that the Defendants, including the City of New York,
various city officials, and Abad, violated his constitutional rights and committed a number of state
law torts against him during the arrest, investigation, and subsequent proceedings. Defendants now
bring motions for Judgment on Pleadings alleging that Plaintiff has failed to state for his federal 42
U.S.C. § 1983 claims and asking the Court to decline to exercise supplemental jurisdiction over his
state law claims. For the reasons below, the Court grants Defendants' motions.

FACTUAL AND PROCEDURAL BACKGROUND

**A. Judicial Notice**

The Court accepts the facts as alleged in the Complaint as true on a Fed. R. Civ. P. 12(c)

motion for judgment on the pleadings. Additionally, on a motion for judgment on the pleadings,

a district court may rely upon "the pleadings and exhibits attached thereto, statements or

documents incorporated by reference in the pleadings, matters subject to judicial notice, and

documents submitted by the moving party, so long as such documents either are in the possession of the party opposing the motion or were relied upon by that party in its pleadings." *McCrary v. Cnty. of Nassau*, 493 F. Supp. 2d 581, 587 (E.D.N.Y. 2007) (Feuerstein, J.) (citing *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). "This includes public records from plaintiff's criminal file." *Reyes v. City of New York*, 10-CV-1838, 2012 WL 37544, at *1, n.1 (E.D.N.Y. Jan. 9, 2012) (Glasser, J) (citing *Vasquez v. City of New York*, 99-CV-4606, 2000 WL 869492, at *1 n.3 (S.D.N.Y. June 29, 2000) (Chin, D.J.)).

Here, Plaintiff has relied upon the criminal complaints Defendant Abad made against him in drafting his Complaint, especially in light of his claims for intentional infliction of emotion distress, slander, and defamation claims against Abad. *See* Compl. ¶¶ 25, 29. Plaintiff could not purport to bring such claims against Abad unless he was referencing her complaints to the NYPD, which were memorialized in the police reports surrounding Plaintiff's arrest. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (reiterating "that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion"); *see also Obilo v. City Univ. of City of New York*, 01-CV-5118, 2003 WL 1809471, at *4 (E.D.N.Y. Apr. 7, 2003) (Trager, J.) (finding that where plaintiff alleges that his false arrest was conspiratorial in nature, it is an implicit reference to the incident report and police complaint, which can be considered on a Fed. R. Civ. P. 12 motion). Accordingly, the Court takes judicial notice of and relies upon the NYPD reports in Dkt. 22 (Decl. of Felicia Gross, Esq. ("Gross Decl.")), Exs. F–H.[1]

---

[1] Gross Decl. Exs. A–E are referenced in this Opinion by means of background only and were not relied upon by the Court in reaching any legal conclusions.

## B. Facts Surrounding Plaintiff's Arrest

Plaintiff Omar B. Lamont, a resident of Pennsylvania, brings this civil rights action against Angela I. Abad, an individual citizen and resident of Queens County, New York, and the "City Defendants" (the City of New York, the NYPD, Officer Moondy Soo-Hoo,[2] other unnamed police officers, and the District Attorney of Queens County (hereinafter, the "DA"), New York). Dkt.1 ("Compl."), ¶¶ 3–7.

Plaintiff, although married, dated and lived with Defendant Abad in College Point, NY, until March 25, 2011. Compl. ¶ 13. After Abad and Plaintiff ended their relationship, Plaintiff informed Abad that he would be going to the apartment to retrieve his personal possessions. Compl. ¶ 14. Abad responded that "she was going to accuse the plaintiff of burglary and get him arrested should he come to the house." *Id.* Weeks later, Plaintiff let himself into the apartment with a key and removed the items that he personally owned. *Id.* For this conduct, Plaintiff was charged with Criminal Trespass in the Second Degree of a Dwelling, Petit Larceny, and Criminal Trespass in the Third Degree. Gross Decl., Ex. C. Plaintiff pled guilty to Criminal Mischief and received a conditional discharge. Gross Decl., Ex. D. The Queens County Court subsequently issued a restraining order prohibiting Plaintiff from contacting Abad for two years. Gross Decl., Ex. E.

The events pertinent to this lawsuit[3] began in December 2011. On December 18, 2011 at approximately 1:30 pm, Defendant Abad went to the 109th Precinct to report that the front and rear left side tires of her Mazda Miata sedan had been slashed. Gross Decl., Ex. F. Non-party NYPD Officer Jose Ramos responded to the complaint and filled out a complaint report based on Abad's

---

[2] Plaintiff misspells Officer Soo-Hoo's name in the Complaint, the Court uses the correct spelling of the Defendant's name herein.

[3] Plaintiff's claims in this action are exclusively premised on the "arrest, incarceration[,] and subsequent release of [P]laintiff on January 12, 2012. The first arrest [from March 2011] constitutes [only] background material." Compl. ¶ 17.

description of events. *Id.* The report noted that the car was parked outside Abad's residence and, according to Abad, her tires had been slashed four times previously. *Id.* Abad reported to the police that she had a video surveillance system installed outside her home, that she reviewed the surveillance footage, and that while the recording did not capture his face, she believed the perpetrator to be her ex-boyfriend, Plaintiff Omar Lamont. *Id.*

Defendant Officer Soo-Hoo was, at that time, staffed in the Domestic Violence Unit of the 109th Precinct in Queens County. On December 22, 2011, Officer Soo-Hoo called Abad to inquire about the status of the tire slashing incident. Gross Decl., Ex. G. Abad proceeded to file a written Domestic Incidence Report at the 109th Precinct. *Id.* In that report, Abad repeated the allegations she made to Officer Ramos on December 18, 2011. *Id.* Additionally, Abad wrote that after reviewing the surveillance video, she "knew it was [Plaintiff]" based on "the way he walk[ed], his build, and his height[,] which is 6'6." *Id.* In total, Abad made two written complaints and one oral complaint about Plaintiff's alleged conduct on two separate occasions.

On December 29, 2011 Officer Soo-Hoo went to Plaintiff's place of employment, inquired about Plaintiff's whereabouts, and informed a co-worker that NYPD was looking to arrest Plaintiff. Compl. ¶ 9. Thereafter on January 4, 2012, Officer Soo-Hoo called Plaintiff's wife and asked her to contact the police department. Compl. ¶ 10. Following his wife's instructions, Plaintiff returned Officer Soo-Hoo's call. *Id.* On January 12, Plaintiff surrendered to the NYPD at the 109th Precinct. *Id.* Plaintiff was then "handcuffed, fingerprinted and photograph[ed]" and "transported to Central Booking in Kew Gardens, Queens. Plaintiff was incarcerated until almost midnight of that same day." *Id.*

Prior to Plaintiff's arraignment, the DA's Office declined to prosecute Plaintiff "on the ground that [it] had no case as a result of this arrest and complaint and the matter was dismissed[.]" Compl. ¶ 11.

## C. Procedural Background

Plaintiff now alleges that he was subjected "to a pattern of malicious prosecution, false arrests, excessive force in these arrests, and has been subject to slander, defamation, and the intentional infliction of mental distress." Compl. ¶ 16. Plaintiff alleges that he was humiliated by these events and "suffers from constant anxiety, depression, and loss of sleep." Compl. ¶ 17. Plaintiff alleges the following causes of action: (1) a *Monell* claim against the City of New York for an alleged "custom and policy of making illegal and false arrests with excessive force, without probable cause . . . . [that are] dismissed in court[;]" (2) a § 1983 claim against all Defendants, except for the DA, for false arrest; (3) a § 1983 claim against all Defendants, except for the DA, for excessive force and the torts of assault and battery; (4) a § 1983 claim against all Defendants for a conspiracy to intentionally cause mental distress; (5) a § 1983 claim against the DA for malicious prosecution; and (6) a claim for slander and defamation against all Defendants for arresting Plaintiff at his place of business and "all the actions . . . in this matter[.]" Compl. ¶¶ 18–29.

Plaintiff filed his Complaint on May 17, 2012. Dkt. 1. All Defendants have answered. Dkt. 6, 8. The City Defendants and Defendant Abad have each brought a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Dkts. 21, 24.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for a Rule 12(c) motion is the same as the standard for a Rule 12(b)(6) motion. *See Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). Thus, the Court must accept the factual allegations set forth in the Complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). Additionally, when a defendant raises an affirmative defense and "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law," dismissal is proper. *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

## DISCUSSION

### A. Claims Against the City Defendants

#### 1. False Arrest

Plaintiff alleges that Defendants the City of New York, Officer Soo-Hoo, and the other unidentified officers falsely arrested him in violation of his constitutional right to be free from unlawful seizure. *See* U.S. Const., amends. IV, XIV.

To state a § 1983 claim for false arrest, a plaintiff must establish that (1) the defendant intentionally confined plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *See Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003). It is well established that probable cause is an absolute defense to a § 1983 claim for false arrest. *See Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

A police officer has probable cause to arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3 at 852. The validity of an arrest does not depend upon a finding that the arrested person is guilty. *See Pierson v. Ray*, 386 U.S. 547, 555 (1967). Rather, a determination of the existence of probable cause "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time." *Maryland v. Macon*, 472 U.S. 463, 470 (1985) (internal citation omitted). An officer's subjective state of mind is irrelevant, so long as there is objective probable cause that the suspect committed some crime—even if it is not the crime the suspect is ultimately charged with. *Devenpeck v. Alford*, 543 U.S. 153, 153–54 (2004).

"'[A]bsent circumstances that raise doubt as to the victim's veracity,' a victim's report of a crime is generally enough, by itself, to establish probable cause." *Koester v. Lanfranchi*, 288 F. App'x 764, 766 (2d Cir. 2008) (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)); *see also Jean v. City of New York*, 09-CV-801, 2011 WL 4529634, at *4 (E.D.N.Y. Sept. 28, 2011) (Dearie, J.) *aff'd*, 512 F. App'x 30 (2d Cir. 2013). Nonetheless, when doubts arise, the officer must investigate and corroborate the allegations. *See Jean*, 2011 WL 4529634, at *4. "The most common situation in which such doubts arise is when there exists a prior relationship between the victim and the accused that gives rise to a motive for a false accusation." *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998) (Gleeson, J.). In such circumstances, "the complaint alone *may* not constitute probable cause; the officer *may* need to investigate further." *Id.* (emphasis added) "Nevertheless, when a victim precisely identifies the alleged perpetrator of a crime and there is independent corroborative evidence to support at least some of the victim's assertions, a person of reasonable caution is warranted in

believing that an offense has been committed by the alleged perpetrator." *Jean*, 2011 WL

4529634, at \*4 (citing *Brodie v. Fuhrman*, 07-CV-4212, 2010 WL 1189347, at \*6 (E.D.N.Y.

2010) (Trager, J.)). "A variety of circumstances might corroborate a putative victim's veracity

…. [s]uch … as (1) the officer's observation of the putative victim's physical injuries, (2) the

level of detail and consistency in the putative victim's description of events, or (3) the putative

victim's identification of the plaintiff by name and physical description." *Brodie*, 2010 WL

1189347, at \*6 (internal citations and quotations omitted) (collecting cases).

Here, the record is clear that Officer Soo-Hoo had probable cause to arrest Plaintiff.

Abad had filed three reports with the police on two different dates specifically and consistently

alleging that Plaintiff had slashed her tires. *See* Gross Decl. Exs. F, G. Furthermore, Abad

identified Plaintiff by name, detailed his conduct, and identified him by his build, height, and

gait, as witnessed on her surveillance camera. *See id.*, Ex. G. The information was consistent

between the two reports, which were made four days apart, and Abad also offered specific

corroborating information that it was Plaintiff whom she observed on the surveillance video.

*Compare* Gross Decl. Ex. F *with* Ex. G.[4] As Judge Dearie outlined in the *Brodie* decision, the

victim and alleged perpetrator's prior relationship will not cast doubt on the veracity of the

victim's complaint when the victim provides a detailed and consistent description of events, and

the victim identifies the perpetrator by name and physical description. *See Brodie*, 2010 WL

1189347, at \*6. Both of these factors were adequately met in this case.

---

[4] While Officer Ramos could have observed Abad's surveillance tape, he did not. However, in making a probable cause determination, an officer is not required to perform every possible investigative procedure. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

Furthermore, besides her prior relationship with Plaintiff, there was no basis to doubt Abad's credibility or veracity. While further investigation *may* be required in certain circumstances, Abad's precise identification of Plaintiff, on two occasions and with specific physical references, and the existence of the corroborative surveillance video provided the requisite support for Abad's assertions to create probable cause. *See Jean*, 2011 WL 4529634, at *4. And Officer Soo-Hoo did not, as Plaintiff argues, "automatically credit" Abad's statements to the police. Officer Soo-Hoo went to Plaintiff's place of employment, spoke with the Assistant Manager, and spoke with Plaintiff's wife on the phone. *See* Compl. ¶¶ 9–10. Then, following a conversation between Plaintiff and Officer Soo-Hoo, Plaintiff went to the 109th Precinct and turned himself in to the police. Compl. ¶ 10. At the police station, Officer Soo-Hoo was able to further corroborate Abad's description of Plaintiff. *See* Gross Decl., Ex. H. It was only at this point, with the victim's statements, numerous attempts to contact Plaintiff—including a phone call that preceded the Plaintiff turning himself in—and the officer's in-person visual verification of the victim's description, did Officer Soo-Hoo place Plaintiff under arrest. In the absence of any discernible basis creating doubt as to the victim's veracity, during the four weeks since the alleged criminal conduct, Officer Soo-Hoo had probable cause to arrest Plaintiff on January 12, 2012.[5]

The cases cited by Plaintiff are inapposite. For example, in *Oliveria v. Mayer*, an anonymous non-victim motorist alerted police that "three dark skinned males [were] handling an expensive video camera, while driving a dilapidated station wagon through an affluent area of North Stamford, Connecticut" and suggested there might have been a burglary. 23 F.3d 642, 644

---

[5] There is no dispute that that the alleged tire slashing satisfied the elements of Criminal Mischief in Third Degree. *See* N.Y. Penal Code § 145.05 (requiring (1) damages the vehicle of another person; (2) with intent to cause damage; and (3) without reasonable grounds to believe he had any right to cause such damage.).

(2d Cir. 1994). Although no burglary had been reported, the police proceeded to conduct a "high-risk" or "felony" stop procedure on the defendants. *Id.* In holding that the motorist's call was insufficient to establish probable cause, the Second Circuit found that it was notable that "this case does not involve an alleged victim or even an eye-witness providing facts and details that, if true, would indicate or even reasonably suggest that a crime had taken place." *Id.* at 647. In fact, the Court reiterated that "when information furnished by a single complainant suffices to establish probable cause, such information often comes from the victim, who has provided specific details of the crime." *Id.* Here, by contrast, the officers received a direct report from a victim who watched the events unfold on her surveillance camera, provided a description of Plaintiff, and detailed the criminal act.

Officer Soo-Hoo had probable cause to arrest Plaintiff on January 12, 2012 in light of Abad's specific, consistent, and corroborated allegations. Accordingly, Plaintiff's claim for false arrest against the City of New York, Officer Soo-Hoo, and the other unidentified officers fails as a matter of law.

### 2. Malicious Prosecution

Plaintiff alleges, as a fifth cause of action, that the Queens County DA maliciously prosecuted him "without legal basis." Compl. ¶ 27.

To state a claim for malicious prosecution, a plaintiff must adequately allege "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, . . . (4) that the prosecution was terminated in the plaintiff's favor[, and] (5) that there was a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

Plaintiff has failed to adequately allege a malicious prosecution claim for no less than three reasons. *First*, Plaintiff admits that the DA declined further prosecution once Plaintiff was brought before a judge for his arraignment. *See* Compl. ¶ 11 ("the matter was dismissed prior to the criminal court arraignment"). Accordingly, Plaintiff cannot plausibly allege that there was a post-arraignment restraint on his liberty. *See Rohman*, 215 F.3d at 215. *Second*, the Complaint is utterly devoid of any non-conclusory allegation that the DA acted with malice.[6] *Third*, as stated in Sec. A.1 *supra*, there was probable cause that Plaintiff committed Criminal Mischief in Third Degree, which is an absolute defense to a malicious prosecution claim. *See Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010). For these reasons, Plaintiff's claim for malicious prosecution must be dismissed for failure to state a claim.

### 3. Excessive Force

Plaintiff alleges that the City of New York, Officer Soo-Hoo, and other individual officers used excessive force in effectuating his arrest in violation of his constitutional rights.

In the arrest context, "claims that law enforcement officers have used excessive force . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). To prevail on a Fourth Amendment excessive force claim, a plaintiff must show that the amount of force used by police was "objectively unreasonable in light of the facts and circumstances confronting [the officers], without regard to [their] underlying intent or motivation." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (citing *Graham*, 490 U.S. at 397) (internal quotation marks omitted).

---

[6] In the malicious prosecution context, malice is "a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (internal quotations and citations omitted).

Plaintiff alleges that he was subjected to assault, battery, and excessive force. Compl. ¶ 23. However, Plaintiff's sole allegation of force is that he was handcuffed. *Id.* ¶ 10. Plaintiff does not allege that any other force was used against him, nor does he allege that he was injured. It is well-established that the handcuffing of an arrestee, without more, is insufficient to support a federal claim for excessive force. *See Lemmo v. McKoy*, No. 08-CV-4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) (Dearie, J.) ("[T]he Second Circuit and district courts in the Circuit recognize the concept of '*de minimis*' injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed."); *Chevalier v. City of New York*, No. 11-CV-1511, 2011 WL 4831197, at *3 (S.D.N.Y. Oct. 12, 2011) (Sand, J.) ("[S]tanding alone, even tight handcuffing—which plaintiff does not allege—is insufficient to support an excessive force claim."); *see also O'Leary v. City of New York*, 938 F. Supp. 2d 410, 415–16 (E.D.N.Y. 2013) (Kuntz, J.) (same). Thus, absent an allegation suggesting that any force was used against Plaintiff other than the constitutionally permissible handcuffing, Plaintiff's excessive force claim is dismissed for failure to state a claim.

### 4. Monell *Claim*

Plaintiff's alleges that the City of New York subjected him, through the NYPD, to "a custom and policy of making illegal and false arrests with excessive force, without probable cause, in violation of [his] civil rights." Compl. ¶ 19.

To state a claim for municipal liability under *Monell,* a plaintiff must show (1) a violation of his constitutional rights, and (2) that the violation was caused by a municipal policy or custom. *See Sheikh v. City of New York Police Dep't,* Nos. 03-CV-6326 and 05-CV-4718, 2008 WL 5146645, at *11 (E.D.N.Y. Dec. 5, 2008) (Garaufis, J.) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690–91 (1978)). Because this Court has already concluded, *supra*, that Plaintiff has not suffered any violation of his constitutional rights, his *Monell* claim must be

dismissed. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*per curiam*) (holding that when police officer's conduct caused no constitutional harm, there is no basis for awarding damages against a municipality even if its policies authorize unconstitutional behavior); *see also Curley*, 268 F.3d at 71 (the Circuit has "recognized that a municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights").

### 5. State Law Claims Against the City Defendants

Plaintiff alleges that the City Defendants committed the following state law torts against him: intentional infliction of emotional distress,[7] slander, and defamation. *See* Compl. ¶¶ 25, 29.

Under New York General Municipal Law § 50, no tort action may be maintained against a city or its officers, agents, or employees unless a notice of claim is first served upon the city. N.Y. Gen. Mun. L. §§ 50-e, 50-i(1); *Hyde v. Arresting Officer Caputo*, No. 98-CV-6722, 2001 WL 521699, at *4 (E.D.N.Y. May 11, 2001) (Block, J.) ("Under New York law, a notice of claim is a mandatory precondition to bringing a tort claim against a municipality or any of its officers, agents or employees."); *Cleghorne v. City of New York*, 99 A.D.3d 443, 446 (1st Dep't 2012) (same). "Notice of claim requirements are strictly construed by New York state courts," and failure to provide a notice of claim generally requires dismissal of a plaintiff's state law

---

[7] While the Fourth Cause of Action is styled as an Intentional Infliction of Emotional Distress claim pursuant to § 1983, *see* Compl. ¶¶ 24–25, there is no federal law or constitutional principle on which to base such a claim, *see Manson v. Narus*, 08-CV-1, 2008 WL 4911152, at *4 (D. Conn. Nov. 11, 2008) (Hall, J.) ("[I]n contrast to claims for false arrest and malicious prosecution, which are cognizable as both state law claims and as section 1983 claims, claims for intentional infliction of emotional distress are ordinarily brought under state law.") (citing *Jenkins v. City of New York*, 478 F.3d 76, 81 (2d Cir. 2007); *Britt v. Garcia*, 457 F.3d 264 (2d Cir. 2006)). Accordingly, the Court interprets the Fourth Cause of Action as a claim for the New York common law tort of intentional infliction of emotion distress. *See, e.g., Klein v. Metro. Child Servs., Inc.*, 100 A.D.3d 708, 710 (2d Dep't 2012) (stating elements of IIED under New York law).

claims. *See Hardy v. N.Y.C. Health & Hosp. Corp.,* 164 F.3d 789, 793–94 (2d Cir. 1999) (internal quotation marks omitted).

In this case, there is no evidence that Plaintiff filed a notice of claim or otherwise complied with New York General Municipal Law § 50. Indeed, Plaintiff does not even respond to the City Defendant's argument that he failed to file a notice of claim. *See* Dkt. 29 ("City Defs.' Reply Br.") at 11. Because "a notice of claim is a mandatory precondition to bringing a tort claim against a municipality or any of its officers, agents or employees," *Hyde,* 2001 WL 521699, at *4, and Plaintiff failed to comply with this precondition, Plaintiff's state law tort claims are dismissed, *see O'Leary,* 938 F. Supp. 2d at 416–17.

**B. Claims Against Defendant Abad**

*1. Abad's § 1983 Liability*

Plaintiff alleges that Defendant Abad, undisputedly a private citizen, is liable under 42 U.S.C. § 1983 for false arrest, excessive force, and intentional infliction of emotional distress. *See* Compl. ¶¶ 21, 23, 25.

"To state a claim under § 1983, a [p]laintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). "In order to satisfy the state action requirement where the defendant is a private entity, the allegedly unconstitutional conduct must be 'fairly attributable' to the state." *Tancredi v. Metro. Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999)). "Conduct that is ostensibly private can be fairly attributed to the state only if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Id.* (quoting *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 (2001)) (internal quotations omitted).

A private individual who "operates as a willful participant in joint activity with the State or its agents" can be found to have acted under the color of state law for purposes of § 1983. *Id.* (quoting *Brentwood Academy*, 531 U.S. at 296); *see also Gordon v. City of New York*, 10-CV-5148, 2012 WL 1068023, at *11 (E.D.N.Y. Mar. 29, 2012) (Amon, C.J.).[8] "However, a complaint premised on this 'joint participation theory' of state action cannot rest on conclusory assertions that the private individuals acted in concert with state officials, but must allege facts demonstrating that private actors and agents of the state 'carried out a deliberate, previously agreed upon plan,' or that their actions 'constitute[d] a conspiracy or meeting of the minds.'" *Gordon*, 2012 WL 1068023, at *11 (quoting *Dahlberg v. Becker*, 748 F.2d 85, 92 (2d Cir. 1984)); *see also Rosen v. Cnty. of Suffolk*, 53 Fed. App'x 578, 580 (2d Cir. 2002) ("[I]t is not enough to make a conclusory allegation that the private and state parties acted in concert, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor.").

"[T]he mere fact that a private person falsely reported criminal conduct to government officials is insufficient to establish liability as a state actor under § 1983." *Gordon*, 2012 WL 1068023, at *12 (citing *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939 n.21 (1982)) (collecting cases). Plaintiff merely alleges that Abad told officers that Plaintiff had slashed her tires and captured the incident on surveillance video. Even if false (it is noteworthy that the Complaint never alleges that Abad's reports to the police about Plaintiff slashing her tires were false), this would not be enough to constitute joint participation with the government and render

---

[8] There are three categories of conduct in which § 1983 liability attaches to a private person, however Plaintiff only alleges the joint participation theory here. *See Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 221 (E.D.N.Y. 2010) (Garaufis, J.) ("(1) the state compelled the private party's conduct, (2) the private party acted jointly with a state, or (3) the private party fulfilled a role that is traditionally a public function performed by a state.") (citing *Sybalski v. Indep. Group Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)).

Abad a state actor liable under § 1983. *See Chodkowski v. City of New York*, 06-CV-7120, 2007 WL 2717872, at *9 (S.D.N.Y. Sept. 11, 2007) (Sand, J.). Plaintiff has wholly failed to allege, in a non-conclusory fashion, a plan or conspiracy among the state actors and Abad.

Furthermore, the facts here are not similar to instances where courts have found a private citizen to be a state actor because of a long history of submitting baseless accusations against a plaintiff. *Cf. Weintraub v. Bd. of Educ. of City of New York*, 423 F. Supp. 2d 38, 58 (E.D.N.Y. 2006) (Glasser, J.) *on reconsideration in part*, 489 F. Supp. 2d 209 (E.D.N.Y. 2007), *aff'd sub nom.*, 593 F.3d 196 (2d Cir. 2010) (holding that a private actor with a history of making baseless accusations with the intent to have an innocent person arrested could be held liable under § 1983). Here, Abad only reported two discrete instances to the police regarding Plaintiff, and one of those reports had merit as it resulted in Plaintiff pleading guilty to Criminal Mischief. *See* Gross Decl., Ex. D; *see also Samtani v. Cherukuri*, 11-CV-2159, 2012 WL 1657154, at * 4 (E.D.N.Y. May 11, 2012) (Amon, J.) *judgment vacated on reconsideration*, 2012 WL 1821413 (E.D.N.Y. May 18, 2012) (noting that *Weintraub*'s application has been limited to the "narrow circumstances presented in that case where a defendant has a history of making *baseless* accusations of against the plaintiff with the intent to secure the plaintiff's arrest") (emphasis added). In short, Abad's conduct was neither extensively repetitive nor exclusively baseless. Accordingly, Abad's reports of criminal behavior to the police do not render her a state actor and Plaintiff's § 1983 claims against her must be dismissed for failure to state a claim.

### 2. Jurisdiction Over State Law Claims Against Abad

Defendant Abad argues that Plaintiff's state law claims against her for slander, defamation, and intentional infliction of emotional distress[9] must be dismissed because the

---

[9] *See supra* n.7.

Court should not exercise supplemental jurisdiction over them. *See* Dkt. 25 (Def. Abad's Memo of Law in Support of Her Motion to Dismiss ("Abad's Br.")), at 7–8.

The question of whether this Court can continue to exercise jurisdiction over this action turns upon whether Plaintiff is also invoking diversity jurisdiction or if the Complaint is solely premised on federal question jurisdiction. If Plaintiff's only basis for jurisdiction against Abad in this action is federal question jurisdiction spurring from his purported federal civil rights claims against her, *see* 28 U.S.C. § 1331 and 42 U.S.C. § 1983, the question of whether this Court should exercise supplemental jurisdiction over the pendent New York state tort claims is open to consideration, *see* 28 U.S.C. § 1367. If however, Plaintiff contends that his state law claims are based on diversity jurisdiction, *see* 28 U.S.C. § 1332, then original jurisdiction over the state claims lies with this Court.

"[I]t is well established that [t]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322-23 (2d Cir. 2001) (quoting *Advani Enter., Inc. v. Underwriters at Lloyds,* 140 F.3d 157, 160 (2d Cir. 1998) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) and *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435))). Under § 1332(a)(1), diversity jurisdiction exists in "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States[.]" "An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). Domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Linardos v. Fortuna,* 157 F.3d 945, 948 (2d Cir. 1998). It is "well settled that an allegation of *diversity of residence* does not satisfy the requirements of federal

diversity jurisdiction." *Yonofsky v. Wernick,* 362 F. Supp. 1005, 1016 (S.D.N.Y. 1973) (Edelstein, C.J.) (collecting cases) (emphasis added). "Nevertheless . . . a defect of this sort does not require dismissal if it is otherwise clear that diversity of citizenship exists." *Id.*

Plaintiff has not met his burden of establishing diversity jurisdiction. *First,* Plaintiff merely and insufficiently pleads diversity of residency. *Compare* Compl. ¶ 3 (stating that Plaintiff is "a citizen of the United States and a *resident* of Pike Country, State of Pennsylvania) *with* Compl. ¶ 7 (Defendant Abad is "a *resident* of Queens County, State of New York) (emphases added). *Second,* under this Record, the Court cannot cure the inadequate pleading by finding that it is "otherwise clear that diversity of citizenship exists." *See Yonofsky,* 362 F. Supp. at 1016. The Complaint states that Plaintiff resided in New York with Abad until March 25, 2011. Compl. ¶ 13. This disturbs any ability for the Court to be assured that Pennsylvania is Plaintiff's "true fixed home" to which "he has the intention of returning[.]" *Linardos,* 157 F.3d at 948. *Third,* the Complaint only asserts federal question and supplemental jurisdiction, and it is devoid of any indication that Plaintiff is invoking diversity jurisdiction. Compl. ¶ 2. *Fourth,* in his opposition to Abad's motion, Plaintiff exclusively argues that the Court should extend pendent jurisdiction over the state law tort claims and does not advance a theory of diversity jurisdiction. Dkt. 19-2 (Pl.'s Opp. Br. to Abad's Mot. ("Pl.'s Opp. Abad Br."), at 13–14. Under these circumstances, the Court finds no basis to conclude that Plaintiff has met his burden in establishing diversity jurisdiction and cannot hold that it has original jurisdiction over the state law claims.

Therefore, the Court must determine if it will exercise pendent jurisdiction over the remaining state law claims against Abad. The Court declines to do so.

When the federal claims are dismissed in an action with state law claims based on supplemental jurisdiction, the state claims should be dismissed as well. 28 U.S.C. §1367(c)(3); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966); *In re Merrill Lynch Ltd. P'ships*

*Litig.*, 154 F.3d 56, 61 (2d Cir. 1998). While the dismissal of supplemental state claims is discretionary at this juncture, the usual case "will point toward declining jurisdiction over the remaining state-law claims." *In re Merrill Lynch*, 154 F.3d at 61 (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Once a district court has dismissed all claims over which it has original jurisdiction, it still balances the traditional "values of judicial economy, convenience, fairness, and comity" while maintaining the guiding directive that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Cohill*, 484 U.S. at 350).

In this case, discovery is still pending and there is no reason any discovery would need to be repeated if Plaintiff's pendent claims were brought in state court. Furthermore, a trial date has not been set, and the pending motions are the first dispositive motions that have been brought in the action. Finally, Plaintiff's state tort claims will not be time-barred in New York state court because of this dismissal. *See* N.Y. C.P.L.R. §205(a) (permitting a plaintiff to bring a new action upon the same transaction "within six months after the [prior action's] termination."). Consequently, Plaintiff will suffer no undue prejudice by this Court's refusal to exercise supplemental jurisdiction over his state law claims.

In accordance with the guiding principle that district courts will not typically maintain state claims once the anchoring federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. §1367(c)(3). The Fourth and Sixth Causes of Action against Defendant Abad are, accordingly, dismissed without prejudice.

# CONCLUSION

The City Defendants' Motion for Judgment on the Pleadings, Dkt. 21, is hereby GRANTED. All claims in the Complaint against the City of New York, Officer Soo-Hoo, the District Attorney of Queens County, and Other Unknown Police Officers of the New York Police Department are DISMISSED with prejudice. The Plaintiff's request to amend his Complaint against the City Defendants is denied as futile.[10]

Defendant Abad's Motion for Judgment on the Pleadings, Dkt. 24, is GRANTED. All claims against Defendant Abad are hereby DISMISSED. The Fourth and Sixth Causes of Action against Defendant Abad are dismissed without prejudice.

The Clerk of the Court is respectfully directed to close this action.

**SO ORDERED.**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 29, 2014
      Brooklyn, New York

---

[10]Any attempt by Plaintiff to replead would be futile as: (1) the existence of probable cause is an absolute defense to Plaintiff's false arrest claim; (2) the absence of post-arraignment restraint eviscerates any claim for malicious prosecution; (3) the record is clear that Plaintiff's excessive force claim is patently frivolous; and (4) without any constitutional violation, Plaintiff cannot state a *Monell* claim against the City. *See, e.g., Nealy v. Berger*, 08-CV-1322, 2009 WL 704804, at *11 (E.D.N.Y. Mar. 16, 2009) (Bianco, J.) (finding any attempt to replead would be futile as it was clear that plaintiff could not establish § 1983 liability and the claims were patently frivolous).